**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| BRENDA G. YOUNG,  )<br>    Plaintiff,               )<br>                                   )<br>         v.                      )<br>                                   )<br>CAROLYN W. COLVIN,          )<br>Acting Commissioner of the       )<br>Social Security Administration,  )<br>    Defendant.                  ) | CAUSE NO.: 2:15-CV-264-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brenda G. Young on July 17, 2015, and Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14], filed by Plaintiff on November 2, 2015. Plaintiff requests that the decision of the Administrative Law Judge be reversed with an award of benefits or remanded for further proceedings. On February 19, 2016, the Commissioner filed a response, and on February 29, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Procedural Background**

On December 29, 2011, Plaintiff filed an application for benefits alleging that she became disabled on December 20, 2011. Plaintiff's application was denied initially and upon reconsideration. On February 11, 2014, Administrative Law Judge ("ALJ") Robert M. Senander held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On April 18, 2014, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. Since the alleged onset date of December 30, 2010, the claimant has had severe impairments: status/post breast cancer and lumpectomy, osteopenia, and pelvic floor dysfunction. Beginning on the established onset date of disability, July 24, 2012, the claimant has had severe impairments in addition to the above: bilateral mastectomy September 2013 and diagnosed with degenerative disc disease of the cervical spine.

4. Since the alleged onset date, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. Prior to July 24, 2012, the date on which the claimant became disabled, she had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds and no more than occasional climbing ramps and stairs. Claimant is limited to occasional kneeling, crouching, and crawling, and frequent fine manipulation.

6. Beginning on July 24, 2012, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) except she should never climb ladders, ropes, or scaffolds, and is limited to no more than occasional stooping, kneeling, crouching, and crawling. Claimant is limited to occasional fine and gross manipulation.

7. Prior to July 24, 2012, the claimant was capable of performing past relevant work as an administrative assistant. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

8. Beginning on July 24, 2012, the claimant's residual functional capacity has prevented her from performing past relevant work.

9. The claimant was an individual of advanced age on July 24, 2012, the established disability onset date.

10. The claimant has at least a high school education and is able to communicate

> in English.

11. The claimant does not have work skills that are transferable to other occupations within the residual functional capacity defined above.

12. Since July 24, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform.

13. The claimant was not disabled prior to July 24, 2012, but became disabled on that date and has continued to be disabled through the date of this decision.

On May 22, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Facts

Plaintiff was diagnosed with breast cancer in February 2009. She was treated with a lumpectomy, chemotherapy, and radiation, and in September 2013 underwent bilateral total mastectomies. Plaintiff began reporting decreased energy and difficulty sleeping in September 2010, and was assessed with insomnia and obstructive sleep apnea in 2012.

Plaintiff also suffers from degenerative disc disease and joint pain with numbness and tingling, with pain and swelling reported beginning in October 2009. She was diagnosed with osteopenia on October 27, 2011, and a bone density test on March 1, 2012, revealed osteoporosis of her spine and osteopenia of her left femur. On August 16, 2012, an x-ray of her cervical spine showed an avulsion fracture from the C5 interior end plate, mild reduction of disc space height at

C5-6, subtle retrolisthesis of C5 on C6, and grade 1 anterolisthesis of C4 on C5. On August 27, 2012, an MRI demonstrated multi-level degenerative changes at C3-T1, with moderate spinal canal stenosis and moderate bilateral foramina stenosis, mild spinal stenosis, mild and moderate foramina stenosis at various levels, mild grate 1 anterolisthesis of C4 on C5, and mild grade 1 retrolisthesis on C5 of C6.

In April 2009, Plaintiff began reporting urinary frequency, loose stools and diarrhea to her physicians, and she was suffering from polyuria in June 2011. In February 2012 she was diagnosed with overactive bladder, urge incontinence, pelvic floor dysfunction with dysuria, and possibly irritable bowel syndrome. She had her pelvic sling removed in May 2012 and reported some improvement, but continued to report diarrhea, severe urinary urgency and frequency, incomplete evacuation, and incontinence in August 2013.

### III. Standard or Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the

4

evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into

5

the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is

denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's Residual Functional Capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

**IV.   Analysis**

Plaintiff argues that the ALJ erred in determining Plaintiff's disability onset date and that the ALJ's RFC finding was flawed. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

    A.    <u>Disability Onset Date</u>

"Under SSR 83-20, an ALJ must consider three factors when determining the onset date of disabilities of a nontraumatic origin: (1) the claimant's alleged onset date; (2) the claimant's work history; and (3) medical and all other relevant evidence." *Briscoe*, 425 F.3d at 352. When considering these factors, the primary concern is the medical evidence, and if there is no "medical evidence establishing the precise date an impairment became disabling," then "the ALJ must 'infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process' and should seek the assistance of a medical expert to make this inference."

7

*Briscoe*, 425 F.3d at 352 (quoting SSR 83-20, 1983 WL 31249, at *2 (Jan. 1, 1983)). The claimant's alleged onset date of disability "should be the starting point of the analysis, and that date 'should be used if it is consistent with all the evidence available.'" *Briscoe*, 425 F.3d at 353 (citing SSR 83-20 at *3). In a case where, as here, the Plaintiff challenges the ALJ's selected onset date, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Hendersonv. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999) (quoting *Stein v. Sullivan*, 892 F.2d 43, 46 (7th Cir. 1989)); *see also Creasy v. Barnhart*, 30 F. App'x. 620, 624 (7th Cir. 2002).

Plaintiff alleged an onset date of December 20, 2010, and last worked in December, 2010. The ALJ concluded that she was not disabled until July 24, 2012, based on a doctor's visit that day and an August 27, 2012, MRI that the ALJ related back to July 24, 2012. Plaintiff argues that the ALJ failed to explain how the MRI evidence related back to July 24, 2012, but no further, and that he erred in failing to call a medical expert to review the evidence and determine when the limitations arose. The Commissioner argues that the ALJ explained that the onset date was based on the day that Plaintiff had a doctor's appointment and the physician noted a number of limitations.

The ALJ chose as an onset date a doctor's visit at which Plaintiff's upper extremity symptoms were bad enough to support disability, without considering that they may have been disabling prior to the date on which she was able to obtain that medical treatment. *See Briscoe*, 425 F.3d at 353 ("If the ALJ based his RFC determination on this first date of diagnosis, it is contrary to SSR 83-20 which holds that 'in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e. be decided on medical grounds alone) before onset can be established.'") (quoting SSR 83-20, 1983 WL 31249, at *2); *see also Lichter v. Bowen,*

814 F.2d 430, 436 (7th Cir. 1987) (finding error and failure to properly apply SSR 83-20 when ALJ relied on first medical report of functional limitations despite indications that the limitations predated the physician visit). The ALJ also erred in failing to obtain any new medical opinion evidence regarding the onset date. The choice of June 24, 2012, as the onset date is not properly supported by objective medical evidence, violating the prohibition against ALJs "mak[ing] their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). The ALJ should have obtained medical testimony regarding the disability onset date. *See, e.g., Pierce v. Astrue*, 907 F. Supp. 2d 941, 953 (N.D. Ill. 2012) ("The Court acknowledges that the ALJ's selection of the . . . onset date was not unreasonable from the perspective of a layperson. However, making that inference was simply outside of her province. No objective medical evidence clarifies the actual date when Claimant's hand impairment . . . became disabling and therefore, the ALJ was required to seek input from a doctor on this crucial issue."); *Brothers v. Astrue*, No. 06 C 7088, 2011 WL 2446323, at *10, 2011 U.S. Dist. LEXIS 63848, at *26-27 (N.D. Ill. June 13, 2011) ("The court must conclude that the ALJ's determination of an onset date is not supported by substantial evidence" where "there is no evidence to support the ALJ's chosen onset date. Simply put, nothing happened on [the selected date]. The ALJ did not provide any explanation as to why that was her best guess. . . . Instead, that date appears to have been chosen because the ALJ believed that [the plaintiff] had become disabled at some point in between" the dates of two evaluations.). Accordingly, on remand, the ALJ is directed to obtain medical expert testimony regarding the course of Plaintiff's degenerative disease and when the symptoms of her myriad of ailments became disabling, including contacting Plaintiff's treating physician(s) for clarification of the course of her

disease(s) as needed.

B.     Plaintiff's Reported Limitations

An improper analysis of Plaintiff's disability onset date is not the only error in the ALJ's opinion requiring remand. The ALJ disbelieved the effects or severity of Plaintiff's symptoms, stating that she "did undergo surgery for the alleged impairment (pelvic floor dysfunction and breast cancer), which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms." AR 21. The Court is unable to follow the ALJ's reasoning. It appears that he is refusing to credit Plaintiff's symptoms prior to surgery because surgery was somewhat effective in relieving those symptoms. Even given the most generous reading of the statement, that the ALJ is merely saying that Plaintiff's symptoms were less severe following her surgery, does not revive the ALJ's conclusions. Plaintiff's mastectomy was in September 2013, and the surgery to remove her pelvic sling was on May 25, 2012. If the pelvic surgery had been immediately and completely successful at relieving all of Plaintiff's symptoms (including her breast cancer and degenerative disc disease) – a conclusion patently unsupported by the record – that would mean only that Plaintiff did not experience severe symptoms for the few weeks between May 25 and July 24, 2012, not that her symptoms had never caused limitations on her ability to work. In the alternative, the ALJ is blaming Plaintiff for her symptoms because they were caused by a sling that was inserted by her physicians at their recommendation or indicating that she should have known enough to ask them to remove it earlier. None of these possible readings leads to a supportable, logical conclusion regarding the effect of Plaintiff's symptoms on her ability to do work.

Even if that paragraph of the ALJ's opinion were ignored as anomalous, the remainder of the ALJ's analysis of Plaintiff's reported limitations also requires remand. The ALJ relied on Plaintiff's daily activities to conclude that her symptoms were less limiting than alleged, particularly her ability to care for her hygiene, prepare some meals, check email, and the fact that she socialized with friends once per week and attended church once during most weeks. However, the Seventh Circuit Court of Appeals has repeatedly criticized discounting a claimant's reported symptoms on the basis of her ability to take care of her personal hygiene, children, or basic household chores. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). To the extent that the ALJ was also using Plaintiff's ability to perform some activities of daily living as indicating an ability to perform full-time work, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases."); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("[The Plaintiff's] ability to struggle through the activities of daily living does not mean that she can

manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

      C.      Residual Functional Capacity

Plaintiff argues that the ALJ also failed to explain how he incorporated Plaintiff's severe impairments into the RFC and failed to discuss numerous other impairments alleged by Plaintiff. The Commissioner argues that Plaintiff has not shown that there are functional limitations beyond those incorporated into the RFC.

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

12

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, she must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

In this case, the ALJ found that Plaintiff suffered from several severe impairments, including osteopenia and pelvic floor dysfunction, prior to the date he found her to be disabled. As to the pelvic floor dysfunction in particular, there is ample evidence in the record that Plaintiff suffered from urinary frequency, urinary and bowel incontinence, and diarrhea, symptoms which would likely require additional breaks within the work day. The ALJ failed to explain how he incorporated these limitations in the RFC, despite finding that the pelvic floor dysfunction was a severe impairment. The ALJ also failed to explain how he incorporated Plaintiff's diagnoses of osteopenia and osteoporosis in the RFC, and did not address a number of symptoms Plaintiff complained about, including napping and pain. It appears that he relied almost exclusively on an ECOG Performance Status report completed by Plaintiff's treating oncologist for his determination that Plaintiff was able to perform some light office work. AR 19. However, as pointed out by Plaintiff, that report explicitly only addresses Plaintiff's limitations due to her breast cancer treatment, and is not an assessment of how all of Plaintiff's impairments interact to affect her work. In fact, later on the same page as the ECOG report is an indication that Plaintiff needs additional treatment for her osteoporosis, unrelated to her breast cancer. AR 392. Although the ALJ need not specifically include every limitation alleged by Plaintiff in the RFC, he must consider the combination of

13

impairments, and explain how he incorporated all of symptoms and limitations into the RFC. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p; *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)). This the ALJ failed to do, and this case must be remanded for a new RFC that incorporates all of Plaintiff's limitations, including an explanation of how the limitations from each of her impairments (particularly her severe impairments, but also those that are not severe), alone and in combination, are reflected into the RFC.

D. Remedy

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. In this case, the ALJ failed to properly evaluate when Plaintiff's impairments became disabling, failed to draw a logical bridge from the evidence to his conclusions, and failed to include some of Plaintiff's severe impairments into the RFC. Although Plaintiff requests an award of benefits, she fails to present a developed argument in favor of doing so. The ALJ must review the record in accordance with the regulations, properly analyze her disability onset date, and fully explain how all of Plaintiff's limitations are incorporated into the RFC. These are issues that can only be resolved through further proceedings on remand. Accordingly, this matter is remanded for further proceedings.

This case is being remanded for a new determination of Plaintiff's disability onset date, including considering all the medical evidence of record, addressing all of Plaintiff's impairments

and how they are incorporated into the RFC, obtaining additional medical evidence as needed, and properly assessing Plaintiff's reported symptoms and limitations in accordance with the applicable law.

## V. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 14] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 31st day of August, 2016.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc: All counsel of record